FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

JUN 07 2010

Stephan Harris, Clerk
Cheyenne

George E. Powers, Jr. 5-2062
Sundahl, Powers, Kapp & Martin, LLC
1725 Carey Avenue
P.O. Box 328
Cheyenne, Wyoming 82003
(307) 632-6421 telephone
(307)632-7216 facsimile

## UNITED STATES DISTRICT COURT

## DISTRICT OF WYOMING

| | | |
|---|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, an Illinois insurance company, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | Civil Action No. **10CV0109**J |
| TIMOTHY JOE SMITH, a citizen of Wyoming, and JASON JAY FREDERICK, a citizen of Wyoming, | ) ) ) ) | |
| Defendant. | ) | |

## **COMPLAINT FOR DECLARATORY JUDGMENT**

**COMES NOW** the Plaintiff, State Farm Fire and Casualty Company, by and through its attorneys, Sundahl, Powers, Kapp and Martin, LLC, and for its Complaint does state and allege as follows:

### I. **PARTIES**

1.    State Farm Fire and Casualty Company (hereafter "State Farm") is an insurance company domiciled in the State of Illinois. State Farm is licensed and authorized to do business as an insurance company in the State of Wyoming.

2. Timothy Joe Smith is a citizen of the State of Wyoming.

3. Jason Jay Frederick is a citizen of the State of Wyoming.

## II. VENUE AND JURISDICTION

4. This Court has jurisdiction over the subject matter of this lawsuit, pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 2201. This Court has jurisdiction over the persons of the parties named herein. Venue has been properly laid in this Court.

## III. GENERAL ALLEGATIONS

5. State Farm has issued a policy of homeowner's insurance, policy number 50-BT-7419-3 (hereafter the "Policy"), which was in force and effect on or about April 11, 2009. A true and accurate copy of the Policy is attached hereto and incorporated herein as Exhibit A. Jason Jay Frederick is a named insured under the terms of the Policy.

6. The Policy provides personal liability insurance for covered bodily injuries subject to the terms, conditions and limitations contained therein. It provides liability insurance for covered bodily injury claims subject to a policy limit of three hundred thousand dollars ($300,000).

7. On or about April 11, 2009, an altercation occurred between Timothy Joe Smith and Jason Jay Frederick at a bar in Weston County, Wyoming.

8.    Following this altercation, on April 7, 2010, Smith filed a lawsuit against Frederick seeking recovery of damages caused by the altercation. A copy of the Complaint ("*Smith Complaint*") filed in the case of *Smith v. Frederick*, Campbell County District Court Civil Action No. 30977 (hereafter the "*Smith Lawsuit*"), is attached hereto and incorporated herein as Exhibit B.

9.    Following service of the *Smith Lawsuit*, Frederick tendered defense of this lawsuit to State Farm. State Farm has extended a defense to Frederick under reservation of rights. State Farm reserved its rights to deny coverage for the claims asserted in the *Smith Lawsuit* under the terms of the Policy.

10.    In the *Smith Lawsuit*, Smith alleged that he was at the Cowboy Bar located in Upton, Wyoming on April 11, 2009. He alleges that Defendant Frederick "became angry, and without warning or provocation, unlawfully touched Timothy Joe Smith by striking him in the face and about his body at least twenty-seven times." *Smith Complaint*, ¶ 7. Smith has specifically alleged that "[t]he actions of Defendant Jason Frederick constituted an assault and battery upon the Plaintiff Timothy Joe Smith." *Smith Complain*, ¶ 8. Smith has further alleged that "[t]he actions of the Defendant Jason Jay Frederick, in touching the Plaintiff by striking him and committing an assault and battery in each instance, were unlawful and were performed without the consent of the Plaintiff. *Smith Complaint*, ¶ 9.

3

11.    Smith claims and alleges damages for bodily injuries caused by Frederick's

unlawful touching. Plaintiff lists these injuries as:

> "A.    Left orbital floor blowout fracture;
> B.    Left nasoseptal deviation;
> C.    Inferior turbinate hypertrophy, bilaterally;
> D.    Traumatic fracture and dislodging of two (2) of his teeth;
> E.    The perforation of his left eardrum."

*Smith Complaint,* ¶ 10.

12.    Smith alleges that as a result of Defendant's actions, he underwent

reconstructive surgery for his nose. *Smith Complaint,* ¶ 10. This surgery is alleged to

have included:

> "A.    Open reduction with internal fixation of a left orbital floor fracture;
> B.    Nasoseptal reconstruction;
> C.    Turbinate reduction bilaterally."

*Smith Complaint,* ¶ 11.

13.    The alleged total amount of medical bills and expenses incurred by Smith

as of December 2, 2009 was seventeen thousand, one hundred sixty dollars and seven

cents ($17,160.07). *Smith Complaint,* ¶ 13. Smith alleges that he continues to suffer

from problems with his nose, the teeth that were knocked out by Frederick, and that he

will require further medical care and treatment. *Smith Complaint,* ¶ 14. Smith claims

Frederick has caused him extreme pain and suffering, scarring, disfigurement, emotional

damage, and loss of enjoyment of life. *Smith Complaint,* ¶ 15.

14.     Smith seeks recovery of damages that include medical expenses, economic loss, physical pain and suffering, permanent injury and disability, loss of enjoyment of life, emotional pain, suffering, and distress. *Smith Complaint*, ¶ 19.

15.     The first cause of action in Smith's Complaint is a claim for intentional acts by the defendant.   Under this cause of action, Smith alleges that, "the actions of Defendant were committed intentionally, maliciously, and with the intent to injure the Plaintiff." *Smith Complaint*, ¶ 22.   Furthermore, he alleges that Frederick's "intentional actions" constituted assault and battery. *Smith Complaint*, ¶ 23.

16.     The second cause of action in Smith's Complaint is a claim for punitive damages against the defendant.   Under this cause of action, Smith alleges that, "The actions of Defendant in striking the Plaintiff multiple times were done so in a willful and wanton manner, with a conscious disregard of the consequences to the Plaintiff, and were intended to and in fact caused serious bodily injury." *Smith Complaint*, § 25.   Smith further alleges that, "The actions of Defendant constitute assault and battery, intentional infliction of physical and emotional distress." *Smith Complaint*, ¶ 26.

17.     Smith's third and final cause of action is a claim for the negligent causing of injuries to plaintiff.   Under this cause of action, Smith alleges that, "the Defendant struck the Plaintiff, but did not intend the consequences of his actions in causing bodily injuries and other damages sustained by the Plaintiff." *Smith Complaint*, ¶ 29.

5

18.     Subject to the terms, limitations and conditions of the Policy, State Farm

agreed to provide Frederick with liability insurance for covered bodily injury claims. The

terms of the Policy include an insuring clause, which provides in pertinent part as

follows:

### COVERAGE L -- PERSONAL LIABILITY

If a claim is made or a suit is brought against an **insured** for damages
because of **bodily injury** or **property damage** to which this coverage
applies, caused by an **occurrence**, we will:

1.     pay up to our limit of liability for the damages for which the
       **insured** is legally liable; and

2.     provide a defense at our expense by counsel of our choice.
       We may make any investigation and settle any claim that we
       decide is appropriate. * * *

19.     The term "occurrence" is specially defined under the terms of the Policy as

follows:

"**occurrence**", when used in Section II of this policy means an accident,
including exposure to conditions, which results in:

a.     **bodily injury**; or

b.     **property damage**;

during the policy period.   Repeated or continuous exposure to the same
general conditions is considered to be one **occurrence**.

20.     Liability coverage under Section II of the Policy is also limited by and

subject to exclusions, which include the following exclusions:

6

Coverage L and Coverage M do not apply to:

a.    **Bodily injury** or **property damage**:

    (1)    which is either expected or intended by the **insured**; or

    (2)    which is the result of willful and malicious acts of the **insured**; * * *.

Amendatory Endorsement (Wyoming):

SECTION II-EXCLUSIONS

Item 2: The following exclusion is added:

    Coverage L does not apply to punitive damages.

### IV. CLAIM FOR RELIEF
(Declaratory Judgment Against All Defendants)

21.    State Farm incorporates paragraphs 1 through 20 above as if fully set forth herein.

22.    The allegations of the Complaint filed in the *Smith Lawsuit* do not assert any claim for damages covered by the Policy. The *Smith Lawsuit* does not allege facts and circumstances giving rise to a claim for bodily injury caused by an "occurrence," because the alleged damages were not caused by an accident. In addition and in the alternative, the *Smith Lawsuit* alleges claims for bodily injury of a nature and type that was expected or intended by Defendant Frederick and that is expressly excluded from coverage under the terms of the Policy.

7

23.     In the *Smith Lawsuit*, Smith has included allegations that Frederick "negligently" caused physical and emotional injuries to Smith when he struck him. *Smith Complaint*, ¶ 31.  Smith alleges that, "the Defendant struck the Plaintiff, but did not intend the consequences of his actions in causing bodily injuries and other damages sustained by the Plaintiff." *Smith Complaint*, ¶ 29.

24.     Smith's attempt to characterize the facts by alleging that Frederick acted "negligently" is ineffective and insufficient to create any potential coverage under the terms, conditions and limitations of the Policy.  As a matter of law, the alleged acts of Frederick, consisting of assaulting, battering and beating Smith by striking him, are acts intended to cause injury or, in the alternative, are acts so inherently injurious that they cannot be performed without causing injury.  To use language from Smith's Complaint, Frederick's actions were not negligent they "were committed intentionally, maliciously, and with the intent to injure the Plaintiff." *Smith Complaint*, ¶ 22.  As such, the *Smith Lawsuit* does not allege an "occurrence" under the terms of the Policy and the claims asserted therein are otherwise excluded from any potential coverage under the terms, conditions and limitations of the Policy.

25.     In addition to this altercation not qualifying as an "occurrence," Frederick's policy also excludes coverage for a claim of punitive damages against the insured arising out of a bodily injury or property damage claim caused by an occurrence.  Therefore,

8

Smith's second cause of action for punitive damages is excluded from any potential coverage under the Policy.

26.     State Farm is entitled to this Court's judgment declaring its rights, duties and obligations to Defendant Frederick under the terms, conditions and limitations of the Policy and finding as follows:

> a)     that State Farm does not provide coverage for the claims asserted in the *Smith Lawsuit;*
>
> b)     that State Farm does not have any duty to defend Defendant Frederick from the claims asserted in the *Smith Lawsuit*; and
>
> c)     that State Farm does not have any duty to indemnify Defendant Frederick from any damages that may be awarded to him as a result of any judgment, which may be returned in the *Smith Lawsuit.*

27.     This lawsuit presents a properly justiciable controversy, which presently exists between these parties and which is otherwise ripe for this Court's decision.

WHEREFORE Plaintiff State Farm prays that this Court enter its judgment finding in favor of State Farm and against Defendants: declaring a) that State Farm does not provide coverage for the claims asserted in the *Smith Lawsuit,* b) that State Farm does not have any duty to defend Defendant Frederick from the claims asserted in the *Smith Lawsuit,* and c) that State Farm does not have any duty to indemnify Defendant Frederick

from any damages that may be awarded against him as a result of any judgment, which

may be returned in the *Smith Lawsuit*; awarding State Farm its costs and awarding such

other and further relief as may be just and proper in the premises.

**DATED** this 7th day of June 2010.

George E. Powers, Jr. 5-2062
Sundahl, Powers, Kapp & Martin, L.L.C.
1725 Carey Avenue
P.O. Box 328
Cheyenne, WY  82003-0328
(307)632-6421
(307)632-7216 facsimile
gpowers@spkm.org
Attorney for Plaintiff

State Farm Fire and Casualty Company
Home Office, Bloomington, Illinois 61710



1555 Promontory Circle
Greeley, Colorado 80638

## CERTIFICATE

I, the undersigned, do hereby certify that I am custodian of the records pertaining to the issuance of policies issued by State Farm Fire and Casualty Company of Bloomington, IL, that are processed by the Personal Lines Fire Division of the Greeley Operations Center, Greeley, Colorado.

Based on our available records, I further certify that the attached Renewal Certificate prepared Aug 04 2008 represents a true copy of the policy provisions and coverages as of 09/27/2008 - 09/27/2009 for policy 50-BT-7419-3 issued to Jason Frederick.



Susan Bott
Fire Underwriting Team Manager

State of   Colorado

County of   Weld

Subscribed and sworn to before me this _____ day of _May_, _2010_

Notary Public

My commission expires:        _7/11/2012_

**Exhibit A**                SF-Frederick000001



**State Farm Fire and Casualty Company**
1555 Promontory Circle
Greeley, CO 80638-0001

F-20- 1090-F908    H    F

FREDERICK, JASON
GILLETTE WY

Il.l..l.ll.l..l..lll.l.l..ll.l..l.l..llll.l..l.l.ldl

**RENEWAL CERTIFICATE**

| POLICY NUMBER | 50-BT-7419-3 |
|---|---|

Homeowners Policy
SEP 27 2008 to SEP 27 2009

| TO BE PAID BY MORTGAGEE |
|---|

**Coverages and Limits**

**Section I**
| | | |
|---|---|---|
| A Dwelling | | $183,000 |
| Dwelling Extension | Up To | 18,300 |
| B Personal Property | | 137,250 |
| C Loss of Use | | Actual Loss Sustained |

**Deductibles - Section I**
| All Losses | 500 |
|---|---|

Location:  Same as Mailing Address

**Section II**
| | |
|---|---|
| L Personal Liability | $300,000 |
| Damage to Property of Others | 500 |
| M Medical Payments to Others (Each Person) | 3,000 |

**Loss Settlement Provisions (See Policy)**
A1  Replacement Cost - Similar Construction
B1  Limited Replacement Cost - Coverage B

**Forms, Options, and Endorsements**
| | |
|---|---|
| Homeowners Policy | FP-7955 |
| Increase Dwlg up to $36,600 | OPT  ID |
| Ordinance/Law  10%/  $18,300 | OPT  OL |
| Jewelry and Furs $1,500/$2,500 | OPT  JF |
| Amendatory Endorsement | FE-2250 |
| Policy Endorsement | FE-5320 |
| Fungus (Including Mold) Excl | FE-5398 |
| Motor Vehicle Endorsement | FE-5452 |
| Telecommuter Coverage | FE-5831 |
| Debris Removal Endorsement | * FE-5480 |

*Effective: SEP 27 2008

| **Annual Premium** | **$716.00** |
|---|---|

**Premium Reductions**
| Utility Rating Credit | 317.00 |
|---|---|
| Home/Auto Discount | 227.00 |
| Claim Free Discount | 60.00 |

Inflation Coverage Index:    179.6

NOTICE: Information concerning changes in your policy language is included. Please call your agent if you have any questions.

138-3076 I.7   Rev. 11-14-2005 (e120908b)

*Thanks for letting us serve you...*
N *  21865   401B  I    **Agent** JILL HARTMAN
J1,P3   **Telephone** (307) 283-2187

*If you have moved, please contact your agent.*
*See reverse side for important information.*

REB    **Prepared  AUG 04 2008**

**SF-Frederick000002**

**CONTINUED FROM FRONT**

Mortgagee:  WCDA
            ·MORTGAGE SERVICING
            ITS SUCCESSORS AND/OR ASSIGNS
            Loan No: ▮▮▮▮

**Your coverage amount....**

It is up to you to choose the coverages and limits that meet your needs. We recommend that you purchase a coverage limit equal to the estimated replacement cost of your home. Replacement cost estimates are available from building contractors and replacement cost appraisers, or, your agent can provide an estimate from Xactware, Inc. using information you provide about your home. We can accept the type of estimate you choose as long as it provides a reasonable level of detail about your home. State Farm does not guarantee that any estimate will be the actual future cost to rebuild your home. Higher limits are available at higher premiums. Lower limits are also available, which if selected may make certain coverages unavailable to you. We encourage you to periodically review your coverages and limits with your agent and to notify us of any changes or additions to your home.

**Discounts and Rating** - The longer you are insured with State Farm, and the fewer claims you have, the lower your premium. For policyholders insured by State Farm for three or more years, the Claim Free Discount Plan provides a premium discount if you have not had any claims considered for the Plan in the most recent three-year period since becoming insured with State Farm. Premium adjustments under the Claim Record Rating Plan are based on the number of years you have been insured with State Farm and on the number of claims that we consider for the Plan. Depending on the Plan(s) that applies in your state/province, claims considered for the Plans generally include claims resulting in a paid loss and may include weather-related claims. Additionally, depending on your state/province's plan and your tenure with State Farm, any claims with your prior insurer resulting in property damage or injury may also influence your premium. For further information about whether a Claim Free Discount is in effect in your state/province, the Claim Record Rating Plan that applies in your state/province, and the claims we consider for the Plans, please contact your State Farm agent.

**NOTICE TO POLICYHOLDER:**

For a comprehensive description of coverages and forms, please refer to your policy.

Policy changes requested before the "Date Prepared", which appear on this notice, are effective on the Renewal Date of this policy unless otherwise indicated by a separate endorsement, binder, or amended declarations. Any coverage forms attached to this notice are also effective on the Renewal Date of this policy.

Policy changes requested after the "Date Prepared" will be sent to you as an amended declarations or as an endorsement to your policy. Billing for any additional premium for such changes will be mailed at a later date.

If, during the past year, you've acquired any valuable property items, made any improvements to insured property, or have any questions about your insurance coverage, contact your State Farm agent.

Please keep this with your policy.
(o1f008qg) Rev. 05-2005          (o1f313aa)    (o1f307bb)

SF-Frederick000003

 **State Farm Fire and Casualty Company**
*1555 Promontory Circle*
*Greeley, CO 80638-0001*

| POLICY NUMBER | 50-BT-7419-3 |
|---|---|

**HOMEOWNERS AVAILABLE COVERAGE NOTICE**

F-20- 1090-F908   H   F

| | SEE RENEWAL CERTIFICATE |
|---|---|

FREDERICK, JASON

GILLETTE, WY

Ildhuddludludlldaldudludhludldalludulddd

IT IS IMPORTANT THAT YOU OCCASIONALLY REVIEW THE COVERAGES AND LIMITS IN YOUR HOMEOWNERS POLICY TO BE CERTAIN YOUR NEEDS ARE BEING MET. THE FOLLOWING INFORMATION WILL ASSIST YOU IN THE REVIEW PROCESS.

THE COVERAGE LIMITS FOR COVERAGE A - DWELLING, COVERAGE B - PERSONAL PROPERTY, COVERAGE L - PERSONAL LIABILITY, AND COVERAGE M - MEDICAL PAYMENTS TO OTHERS ARE LISTED ON THE ACCOMPANYING RENEWAL NOTICE. PLEASE REVIEW THESE LIMITS TO DETERMINE IF THEY ARE ADEQUATE IN THE EVENT OF A LOSS.

THE FOLLOWING IS A **PARTIAL LIST** OF THE OPTIONAL COVERAGES YOU HAVE **NOT** ADDED TO YOUR POLICY. THEY MAY BE AVAILABLE TO YOU FOR AN ADDITIONAL PREMIUM.

Back-Up of Sewer or Drain (for damage caused by water from outside the plumbing system which backs up through sewers or drains)

Building Ordinance or Law (higher limits)

Business Property (for higher limits)

Business Pursuits Liability (for teachers, school administrators, sales persons, and clerical workers)

Child Care Liability (for those providing child care in their home)

Earthquake

Firearms (for broadened coverage and higher limits)

Home Computers (for higher limits)

Incidental Business Liability (for those with an incidental office, studio, or school in the home)

Jewelry and Furs (for broadened coverage and higher limits)

Loss Assessment (for neighborhoods with Homeowners Associations)

Nurses Professional Liability (for those in the nursing profession)
**Optional Coverages continued on the reverse side**

This notice contains only a general description of the coverages and is not a contract. All coverages are subject to the provisions in the policy itself. Should you have a need for any of these coverages or higher limits, contact your State Farm Agent to discuss details, cost and eligibility.

**IMPORTANT INFORMATION ABOUT DAMAGE CAUSED BY FLOODING**

This policy does not cover damage to your property caused by flooding. You may be eligible for such coverage through the National Flood Insurance Program ("NFIP"), if you live in a participating community. For more information, contact your State Farm® agent or visit floodsmart.gov.

N 21054 J1,P3    401B   I     **Agent** JILL HARTMAN
**Telephone** (307) 283-2187     REB     **Prepared** AUG 04 2008

SF-Frederick000004

THE FOLLOWING IS A **PARTIAL LIST** OF THE OPTIONAL COVERAGES YOU HAVE **NOT** ADDED TO YOUR POLICY. THEY MAY BE AVAILABLE TO YOU FOR AN ADDITIONAL PREMIUM.


Personal Injury (for your liability to others caused by certain acts of libel, slander, invasion of privacy, false arrest)

Silverware/Goldware (for broadened coverage and higher limits)

SF-Frederick000005

FP-7955
(8/96)







FP-7955
(8/96)



This policy is one of the broadest forms available today, and provides you with outstanding value for your insurance dollars. However, we want to point out that every policy contains limitations and exclusions. Please read your policy carefully, especially "Losses Not Insured" and all exclusions.

SF-Frederick000006

# TABLE OF CONTENTS

## DECLARATIONS

Your Name
Location of Your Residence
Policy Period
Coverages
Limits of Liability
Deductibles

**Begins on Page**

**DECLARATIONS CONTINUED** . . . . . . . . . . . . . . . . . . . .   1

**DEFINITIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

**SECTION I - YOUR PROPERTY**
  COVERAGES . . . . . . . . . . . . . . . . . . . . . . . . . .   3
    Coverage A - Dwelling . . . . . . . . . . . . . . . . . . . . . .   3
    Coverage B - Personal Property . . . . . . . . . . . . . . . . . .   3
    Coverage C - Loss of Use . . . . . . . . . . . . . . . . . . . .   4
    Additional Coverages . . . . . . . . . . . . . . . . . . . . . .   5
    Inflation Coverage . . . . . . . . . . . . . . . . . . . . . . .   7
  LOSSES INSURED . . . . . . . . . . . . . . . . . . . . . . . .   7
  LOSSES NOT INSURED . . . . . . . . . . . . . . . . . . . . . .   9
  LOSS SETTLEMENT . . . . . . . . . . . . . . . . . . . . . . . .  11
  CONDITIONS . . . . . . . . . . . . . . . . . . . . . . . . . .  13

**SECTION II - YOUR LIABILITY**
  COVERAGES . . . . . . . . . . . . . . . . . . . . . . . . . .  15
    Coverage L - Personal Liability . . . . . . . . . . . . . . . . .  15
    Coverage M - Medical Payments to Others . . . . . . . . . . . .  15
    Additional Coverages . . . . . . . . . . . . . . . . . . . . . .  15
  EXCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . . .  16
  CONDITIONS . . . . . . . . . . . . . . . . . . . . . . . . . .  18

**SECTION I AND SECTION II - CONDITIONS** . . . . . . . . . . . . .  19

**OPTIONAL POLICY PROVISIONS** . . . . . . . . . . . . . . . . . . .  20

Includes copyrighted material of State Farm Fire and Casualty Company.
Copyright, State Farm Fire and Casualty Company, 1983, 1992.

FP-7955
8/98)

Printed in U.S.A.

SF-Frederick000007

# HOMEOWNERS POLICY

## DECLARATIONS CONTINUED

We agree to provide the insurance described in this policy:

1. based on your payment of premium for the coverages you chose;

2. based on your compliance with all applicable provisions of this policy; and

3. in reliance on your statements in these Declarations.

You agree, by acceptance of this policy, that:

1. you will pay premiums when due and comply with the provisions of the policy;

2. the statements in these Declarations are your statements and are true;

3. we insure you on the basis your statements are true; and

4. this policy contains all of the agreements between you and us and any of our agents.

Unless otherwise indicated in the application, you state that during the three years preceding the time of your application for this insurance your Loss History and Insurance History are as follows:

1. Loss History: you have not had any losses, insured or not; and

2. Insurance History: you have not had any insurer or agency cancel or refuse to issue or renew similar insurance to you or any household member.

## DEFINITIONS

"You" and "your" mean the "named insured" shown in the Declarations. Your spouse is included if a resident of your household. "We", "us" and "our" mean the Company shown in the Declarations.

Certain words and phrases are defined as follows:

1. "bodily injury" means physical injury, sickness, or disease to a person. This includes required care, loss of services and death resulting therefrom.

   Bodily injury does not include:

   a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any insured to any other person;

   b. the exposure to any such disease, bacteria, parasite, virus, or other organism by any insured to any other person; or

   c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

2. "business" means a trade, profession or occupation. This includes farming.

3. "Declarations" means the policy Declarations, any amended Declarations, the most recent renewal notice or certificate, an Evidence of Insurance form or any endorsement changing any of these.

4. "insured" means you and, if residents of your household:

   a. your relatives; and

   b. any other person under the age of 21 who is in the care of a person described above.

   Under Section II, "insured" also means:

   c. with respect to animals or watercraft to which this policy applies, the person or organization legally responsible for them. However, the animal or watercraft must be owned by you or a person included in 4.a. or 4.b. A person or organization using or having custody of these animals or watercraft in the course of a business, or without permission of the owner, is not an insured; and

FP-7955

SF-Frederick000008

d. with respect to any vehicle to which this policy applies, any person while engaged in your employment or the employment of a person included in 4.a. or 4.b.

5. "insured location" means:

a. the residence premises;

b. the part of any other premises, other structures and grounds used by you as a residence. This includes premises, structures and grounds you acquire while this policy is in effect for your use as a residence;

c. any premises used by you in connection with the premises included in 5.a. or 5.b.;

d. any part of a premises not owned by an insured but where an insured is temporarily residing;

e. land owned by or rented to an insured on which a one or two family dwelling is being constructed as a residence for an insured;

f. individual or family cemetery plots or burial vaults owned by an insured;

g. any part of a premises occasionally rented to an insured for other than business purposes;

h. vacant land owned by or rented to an insured. This does not include farm land; and

i. farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

6. "motor vehicle", when used in Section II of this policy, means:

a. a motorized land vehicle designed for travel on public roads or subject to motor vehicle registration. A motorized land vehicle in dead storage on an insured location is not a motor vehicle;

b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration. A boat, camp, home or utility trailer not being towed by

or carried on a vehicle included in 6.a. is not a motor vehicle;

c. a motorized golf cart, snowmobile, motorized bicycle, motorized tricycle, all-terrain vehicle or any other similar type equipment owned by an insured and designed or used for recreational or utility purposes off public roads, while off an insured location. A motorized golf cart while used for golfing purposes is not a motor vehicle; and

d. any vehicle while being towed by or carried on a vehicle included in 6.a., 6.b. or 6.c.

7. "occurrence", when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

a. bodily injury; or

b. property damage;

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one occurrence.

8. "property damage" means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any insured is not property damage.

9. "residence employee" means an employee of an insured who performs duties, including household or domestic services, in connection with the maintenance or use of the residence premises. This includes employees who perform similar duties elsewhere for you. This does not include employees while performing duties in connection with the business of an insured.

10. "residence premises" means:

a. the one, two, three or four-family dwelling, other structures and grounds; or

b. that part of any other building;

where you reside and which is shown in the Declarations.

2

SF-Frederick000009

## SECTION I - COVERAGES

### COVERAGE A - DWELLING

1. **Dwelling.** We cover the dwelling used principally as a private residence on the **residence premises** shown in the **Declarations.**

   Dwelling includes:

   a. structures attached to the dwelling;

   b. materials and supplies located on or adjacent to the **residence premises** for use in the construction, alteration or repair of the dwelling or other structures on the **residence premises;**

   c. foundation, floor slab and footings supporting the dwelling; and

   d. wall-to-wall carpeting attached to the dwelling.

2. **Dwelling Extension.** We cover other structures on the **residence premises,** separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be other structures.

   We do not cover other structures:

   a. not permanently attached to or otherwise forming a part of the realty;

   b. used in whole or in part for **business** purposes; or

   c. rented or held for rental to a person not a tenant of the dwelling, unless used solely as a private garage.

3. **Property Not Covered.** We do not cover:

   a. land, including the land necessary to support any Coverage A property;

   b. any costs required to replace, rebuild, stabilize, or otherwise restore the land; or

   c. the costs of repair techniques designed to compensate for or prevent land instability to any property, whether or not insured under Coverage A.

### COVERAGE B - PERSONAL PROPERTY

1. **Property Covered.** We cover personal property owned or used by an **insured** while it is anywhere in the world. This includes structures not permanently attached to or

otherwise forming a part of the realty. At your request, we will cover personal property owned by others while the property is on the part of the **residence premises** occupied exclusively by an **insured.** At your request, we will also cover personal property owned by a **guest** or a **residence employee,** while the property is in any other residence occupied by an **insured.**

We cover personal property usually situated at an **insured's** residence, other than the **residence premises,** for up to $1,000 or 10% of the Coverage B limit, whichever is greater. This limitation does not apply to personal property in a newly acquired principal residence for the first 30 days after you start moving the property there. If the **residence premises** is a newly acquired principal residence, personal property in your immediate past principal residence is not subject to this limitation for the first 30 days after the inception of this policy.

**Special Limits of Liability.** These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

a. $200 on money, coins and medals, including any of these that are a part of a collection, and bank notes;

b. $1,000 on property used or intended for use in a **business,** including merchandise held as samples or for sale or for delivery after sale, while on the **residence premises.** This coverage is limited to $250 on such property away from the **residence premises.**

   Electronic data processing system equipment or the recording or storage media used with that equipment is not included under this coverage;

c. $1,000 on securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports and tickets;

d. $1,000 on watercraft of all types and outboard motors, including their trailers, furnishings and equipment;

e. $1,000 on trailers not used with watercraft;

3

FP-7955

SF-Frederick000010

f.  $2,500 on stamps, trading cards and comic books, including any of these that are a part of a collection;

g.  $2,500 for loss by theft of firearms;

h.  $2,500 for loss by theft of silverware and goldware;

i.  $5,000 on electronic data processing system equipment and the recording or storage media used with that equipment. There is no coverage for said equipment or media while located away from the residence premises except when said equipment or media are removed from the residence premises for the purpose of repair, servicing or temporary use. An insured student's equipment and media are covered while at a residence away from home; and

j.  $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging or other similar article.

2. **Property Not Covered.** We do not cover:

a.  articles separately described and specifically insured in this or any other insurance;

b.  animals, birds or fish;

c.  any engine or motor propelled vehicle or machine, including the parts, designed for movement on land. We do cover those not licensed for use on public highways which are:

    (1) used solely to service the **insured location**; or

    (2) designed for assisting the handicapped;

d.  devices or instruments for the recording or reproduction of sound permanently attached to an engine or motor propelled vehicle. We do not cover tapes, wires, records or other mediums that may be used with these devices or instruments while in the vehicle;

e.  aircraft and parts;

f.  property of roomers, boarders, tenants and other residents not related to an **insured**. We do cover property of roomers, boarders and other residents related to an **insured**;

g.  property regularly rented or held for rental to others by an **insured**. This exclusion does not apply to

property of an **insured** in a sleeping room rented to others by an **insured**;

h.  property rented or held for rental to others away from the **residence premises**;

i.  any citizens band radios, radio telephones, radio transceivers, radio transmitters, radar or laser detectors, antennas and other similar equipment permanently attached to an engine or motor propelled vehicle;

j.  books of account, abstracts, drawings, card index systems and other records. This exclusion does not apply to any recording or storage media for electronic data processing. We will cover the cost of blank books, cards or other blank material plus the cost of labor you incur for transcribing or copying such records; or

k.  recording or storage media for electronic data processing that cannot be replaced with other of like kind and quality on the current retail market.

**COVERAGE C - LOSS OF USE**

1. **Additional Living Expense.** When a Loss Insured causes the **residence premises** to become uninhabitable, we will cover the necessary increase in cost you incur to maintain your standard of living for up to 24 months. Our payment is limited to incurred costs for the shortest of: (a) the time required to repair or replace the premises; (b) the time required for your household to settle elsewhere; or (c) 24 months. This coverage is not reduced by the expiration of this policy.

2. **Fair Rental Value.** When a Loss Insured causes that part of the **residence premises** rented to others or held for rental by you to become uninhabitable, we will cover its fair rental value. Payment shall be for the shortest time required to repair or replace the part of the premises rented or held for rental, but not to exceed 12 months. This period of time is not limited by expiration of this policy. Fair rental value shall not include any expense that does not continue while that part of the **residence premises** rented or held for rental is uninhabitable.

3. **Prohibited Use.** When a civil authority prohibits your use of the **residence premises** because of direct damage to a neighboring premises by a Loss Insured, we will cover any resulting Additional Living Expense and Fair Rental

FP-7955

SF-Frederick000011

Value. Coverage is for a period not exceeding two weeks while use is prohibited.

We do not cover loss or expense due to cancellation of a lease or agreement.

## SECTION I - ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions and conditions of this policy.

1. **Debris Removal.** We will pay the reasonable expenses you incur in the removal of debris of covered property damaged by a Loss Insured. This expense is included in the limit applying to the damaged property.

   When the amount payable for the property damage plus the debris removal exceeds the limit for the damaged property, an additional 5% of that limit is available for debris removal expense. This additional amount of insurance does not apply to Additional Coverage, item 3. Trees, Shrubs and Other Plants.

   We will also pay up to $500 in the aggregate for each loss to cover the reasonable expenses you incur in the removal of tree debris from the **residence premises** when the tree has caused a Loss Insured to Coverage A property.

2. **Temporary Repairs.** If damage is caused by a Loss Insured, we will pay the reasonable and necessary cost you incur for temporary repairs to covered property to protect the property from further immediate damage or loss. This coverage does not increase the limit applying to the property being repaired.

3. **Trees, Shrubs and Other Plants.** We cover outdoor trees, shrubs, plants or lawns, on the **residence premises**, for direct loss caused by the following: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles (not owned or operated by a resident of the **residence premises**), Vandalism or malicious mischief or Theft.

   The limit for this coverage, including the removal of debris, shall not exceed 5% of the amount shown in the Declarations for COVERAGE A - DWELLING. We will not pay more than $500 for any one outdoor tree, shrub or plant, including debris removal expense. This coverage may increase the limit otherwise applicable. We do not cover property grown for **business** purposes.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges. This means charges incurred when the fire department is called to save or protect covered property from a Loss Insured. No deductible applies to this coverage. This coverage may increase the limit otherwise applicable.

5. **Property Removed.** Covered property, while being removed from a premises endangered by a Loss Insured, is covered for any accidental direct physical loss. This coverage also applies to the property for up to 30 days while removed. We will also pay for reasonable expenses incurred by you for the removal and return of the covered property. This coverage does not increase the limit applying to the property being removed.

6. **Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money.**

   a. We will pay up to $1,000 for:

      (1) the legal obligation of an **insured** to pay because of the theft or unauthorized use of credit cards and bank fund transfer cards issued to or registered in an **insured's** name. If an **insured** has not complied with all terms and conditions under which the cards are issued, we do not cover use by an **insured** or anyone else;

      (2) loss to an **insured** caused by forgery or alteration of any check or negotiable instrument; and

      (3) loss to an **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

      No deductible applies to this coverage.

      We will not pay more than the limit stated above for forgery or alteration committed by any one person. This limit applies when the forgery or alteration involves one or more instruments in the same loss.

   b. We do not cover loss arising out of **business** pursuits or dishonesty of an **insured**.

   c. Defense:

      (1) We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend claims or suits ends when

5

FP-7955

SF-Frederick000012

the amount we pay for the loss equals our **limit of liability**.

(2) If claim is made or a suit is brought against an **insured** for liability under the Credit Card or Bank Fund Transfer Card coverage, we will provide a defense. This defense is at our expense by counsel of our choice.

(3) We have the option to defend at our expense an **insured** or an **insured's** bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Power Interruption.** We cover accidental direct physical loss caused directly or indirectly by a change of temperature which results from power interruption that takes place on the **residence premises**. The power interruption must be caused by a Loss Insured occurring on the **residence premises**. The power lines off the **residence premises** must remain energized. This coverage does not increase the limit applying to the damaged property.

8. **Refrigerated Products.** Coverage B is extended to cover the contents of deep freeze or refrigerated units on the **residence premises** for loss due to power failure or mechanical failure. If mechanical failure or power failure is known to you, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure shall not include:

   a. removal of a plug from an electrical outlet; or

   b. turning off an electrical switch unless caused by a Loss Insured.

   This coverage does not increase the limit applying to the damaged property.

9. **Arson Reward.** We will pay $1,000 for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit shall not be increased regardless of the number of persons providing information.

10. **Volcanic Action.** We cover direct physical loss to a covered building or covered property contained in a building resulting from the eruption of a volcano when the loss is directly and immediately caused by:

   a. volcanic blast or airborne shock waves;

   b. ash, dust or particulate matter; or

   c. lava flow.

   We will also pay for the removal of that ash, dust or particulate matter which has caused direct physical loss to a covered building or covered property contained in a building.

   One or more volcanic eruptions that occur within a 72-hour period shall be considered one volcanic eruption.

   This coverage does not increase the limit applying to the damaged property.

11. **Collapse.** We insure only for direct physical loss to covered property involving the sudden, entire collapse of a building or any part of a building.

   Collapse means actually fallen down or fallen into pieces. It does not include settling, cracking, shrinking, bulging, expansion, sagging or bowing.

   The collapse must be directly and immediately caused only by one or more of the following:

   a. perils described in **SECTION I - LOSSES INSURED, COVERAGE B - PERSONAL PROPERTY**. These perils apply to covered building and personal property for loss insured by this Additional Coverage;

   b. hidden decay of a supporting or weight-bearing structural member of the building;

   c. hidden insect or vermin damage to a structural member of the building;

   d. weight of contents, equipment, animals or people;

   e. weight of ice, snow, sleet or rain which collects on a roof; or

   f. use of defective material or methods in the construction (includes remodeling or renovation) of the building, if the collapse occurs during the course of the construction of the building.

   Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e. and f. unless the



SF-Frederick000013

loss is the direct and immediate cause of the collapse of the building.

This coverage does not increase the limit applying to the damaged property.

12. **Locks.** We will pay the reasonable expenses you incur to re-key locks on exterior doors of the dwelling located on the **residence premises**, when the keys to those locks are a part of a covered theft loss.

No deductible applies to this coverage.

**INFLATION COVERAGE**

The limits of liability shown in the **Declarations** for Coverage A, Coverage B and, when applicable, Option ID will be increased at the same rate as the increase in the Inflation Coverage Index shown in the **Declarations.**

To find the limits on a given date:

1. divide the Index on that date by the Index as of the effective date of this Inflation Coverage provision; then

2. multiply the resulting factor by the limits of liability for Coverage A, Coverage B and Option ID separately.

The limits of liability will not be reduced to less than the amounts shown in the **Declarations.**

If during the term of this policy the Coverage A limit of liability is changed at your request, the effective date of this Inflation Coverage provision is changed to coincide with the effective date of such change.

## SECTION I - LOSSES INSURED

**COVERAGE A - DWELLING**

We insure for accidental direct physical loss to the property described in Coverage A, except as provided in **SECTION I - LOSSES NOT INSURED**.

**COVERAGE B - PERSONAL PROPERTY**

We insure for accidental direct physical loss to property described in Coverage B caused by the following perils, except as provided in **SECTION I - LOSSES NOT INSURED:**

1. **Fire or lightning.**

2. **Windstorm or hail.** This peril does not include loss to property contained in a building caused by rain, snow, sleet, sand or dust. This limitation does not apply when the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

   This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a fully enclosed building.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles,** meaning impact by a vehicle.

7. **Smoke,** meaning sudden and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief,** meaning only wilful and malicious damage to or destruction of property.

9. **Theft,** including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

   This peril does not include:

   a. loss of a precious or semi-precious stone from its setting;

   b. loss caused by theft:

   (1) committed by an **insured** or by any other person regularly residing on the **insured location.** Property of a student who is an **insured** is covered while located at a residence away from home, if the theft is committed by a person who is not an **insured;**

   (2) in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

7

FP-7955

SF-Frederick000014

(3) from the part of a **residence premises** rented to others:

   (a) caused by a tenant, members of the tenant's household, or the tenant's employees;

   (b) of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins and medals;

   (c) of securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets and stamps; or

   (d) of jewelry, watches, fur garments and garments trimmed with fur, precious and semiprecious stones;

c. loss caused by theft that occurs away from the **residence premises** of:

   (1) property while at any other residence owned, rented to, or occupied by an **insured**, except while an **insured** is temporarily residing there. Property of a student who is an **insured** is covered while at a residence away from home;

   (2) watercraft of all types, including their furnishings, equipment and outboard motors; or

   (3) trailers and campers designed to be pulled by or carried on a vehicle.

If the **residence premises** is a newly acquired principal residence, property in the immediate past principal residence shall not be considered property away from the **residence premises** for the first 30 days after the inception of this policy.

10. **Falling objects.** This peril does not include loss to property contained in a building unless the roof or an exterior wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Sudden and accidental discharge or overflow** of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

a. to the system or appliance from which the water or steam escaped;

b. caused by or resulting from freezing;

c. caused by or resulting from water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

d. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

13. **Sudden and accidental tearing asunder, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss:

a. caused by or resulting from freezing; or

b. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance.

This peril does not include loss on the **residence premises** while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

a. maintain heat in the building; or

b. shut off the water supply and drain the system and appliances of water.

8

FP-7955

SF-Frederick000015

15. **Sudden and accidental damage** to electrical appliances, devices, fixtures and wiring from an increase or decrease of artificially generated electrical current. We will pay up to $1,000 under this peril for each damaged item described above.

16. **Breakage of glass**, meaning damage to personal property caused by breakage of glass which is a part of a building on the **residence premises**. There is no coverage for loss or damage to the glass.

## SECTION I - LOSSES NOT INSURED

1. We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

   a. collapse, except as specifically provided in SECTION I - ADDITIONAL COVERAGES, Collapse;

   b. freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion only applies while the dwelling is vacant, unoccupied or being constructed. This exclusion does not apply if you have used reasonable care to:

      (1) maintain heat in the building; or

      (2) shut off the water supply and drain the system and appliances of water;

   c. freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a swimming pool, hot tub or spa, including their filtration and circulation systems, fence, pavement, patio, foundation, retaining wall, bulkhead, pier, wharf or dock;

   d. theft in or to a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied;

   e. vandalism or malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

   f. continuous or repeated seepage or leakage of water or steam from a:

      (1) heating, air conditioning or automatic fire protective sprinkler system;

      (2) household appliance; or

      (3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;

      which occurs over a period of time. If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which the water or steam escaped;

   g. wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown;

   h. corrosion, electrolysis or rust;

   i. mold, fungus or wet or dry rot;

   j. contamination;

   k. smog, smoke from agricultural smudging or industrial operations;

   l. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings;

   m. birds, vermin, rodents, insects, or domestic animals. We do cover the breakage of glass or safety glazing material which is a part of a building, when caused by birds, vermin, rodents, insects or domestic animals; or

9

FP-7955

SF-Frederick000016

n. pressure from or presence of tree, shrub or plant roots.

However, we do insure for any resulting loss from items a. through m. unless the resulting loss is itself a Loss Not Insured by this Section.

2. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a. **Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure.

b. **Earth Movement,** meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake, landslide, mudflow, mudslide, sinkhole, subsidence, erosion or movement resulting from improper compaction, site selection or any other external forces. Earth movement also includes volcanic explosion or lava flow, except as specifically provided in SECTION I - ADDITIONAL COVERAGES, Volcanic Action.

However, we do insure for any direct loss by fire resulting from earth movement, provided the resulting fire loss is itself a Loss Insured.

c. **Water Damage,** meaning:

(1) flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not;

(2) water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove

subsurface water which is drained from the foundation area; or

(3) water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

However, we do insure for any direct loss by fire, explosion or theft resulting from water damage, provided the resulting loss is itself a Loss Insured.

d. **Neglect,** meaning neglect of the **insured** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

e. **War,** including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

f. **Nuclear Hazard,** meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard shall not be considered loss caused by fire, explosion or smoke.

However, we do insure for any direct loss by fire resulting from the nuclear hazard, provided the resulting fire loss is itself a Loss Insured.

3. We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a. conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault;

10

FP-7955

SF-Frederick000017

b.  defect, weakness, inadequacy, fault or unsoundness in:

(1) planning, zoning, development, surveying, siting;

(2) design, specifications, workmanship, construction, grading, compaction;

(3) materials used in construction or repair; or

(4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the residence premises; or

c.  weather conditions.

However, we do insure for any resulting loss from items a., b. and c. unless the resulting loss is itself a Loss Not Insured by this Section.

# SECTION I - LOSS SETTLEMENT

Only the Loss Settlement provisions shown in the Declarations apply. We will settle covered property losses according to the following.

## COVERAGE A - DWELLING

### 1. A1 - Replacement Cost Loss Settlement - Similar Construction.

a.  We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I - COVERAGES, COVERAGE A - DWELLING**, except for wood fences, subject to the following:

(1) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property;

(2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

(3) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and

(4) we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under Option OL - Building Ordinance or Law Coverage.

b.  Wood Fences: We will pay the actual cash value at the time of loss for loss or damage to wood fences, not to exceed the limit of liability shown in the Declarations for COVERAGE A - DWELLING EXTENSION.

### 2. A2 - Replacement Cost Loss Settlement - Common Construction.

a.  We will pay the cost to repair or replace with common construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I - COVERAGES, COVERAGE A - DWELLING**, except for wood fences, subject to the following:

(1) we will pay only for repair or replacement of the damaged part of the property with common construction techniques and materials commonly used by the building trades in standard new construction. We will not pay the cost to repair or replace obsolete, antique or custom construction with like kind and quality;

(2) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the Declarations, not to exceed the cost to repair or

11

FP-7955

SF-Frederick000018

replace the damaged part of the property as described in a.(1) above;

(3) when the repair or replacement is actually completed as described in a.(1) above, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

(4) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and

(5) we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under **Option OL - Building Ordinance or Law Coverage**.

b. Wood Fences: We will pay the actual cash value at the time of loss for loss or damage to wood fences, not to exceed the limit of liability shown in the Declarations for COVERAGE A - DWELLING EXTENSION.

**COVERAGE B - PERSONAL PROPERTY**

1. **B1 - Limited Replacement Cost Loss Settlement.**

a. We will pay the cost to repair or replace property covered under SECTION I - COVERAGES, COVERAGE B - PERSONAL PROPERTY, except for property listed in item b. below, subject to the following:

(1) until repair or replacement is completed, we will pay only the cost to repair or replace less depreciation;

(2) after repair or replacement is completed, we will pay the difference between the cost to repair or replace less depreciation and the cost you have

actually and necessarily spent to repair or replace the property; and

(3) if property is not repaired or replaced within two years after the date of loss, we will pay only the cost to repair or replace less depreciation.

b. We will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs and collectors items; and

(3) property not useful for its intended purpose.

However, we will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1) our cost to replace at the time of loss;

(2) the full cost of repair;

(3) any special limit of liability described in the policy; or

(4) any applicable Coverage B limit of liability.

2. **B2 - Depreciated Loss Settlement.**

a. We will pay the cost to repair or replace less depreciation at the time of loss for property covered under SECTION I - COVERAGES, COVERAGE B - PERSONAL PROPERTY, except for property listed in item b. below.

b. We will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs and collectors items; and

(3) property not useful for its intended purpose.

12          FP-7955

SF-Frederick000019

However, we will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1) our cost to replace at the time of loss;

(2) the full cost of repair;

(3) any special limit of liability described in the policy; or

(4) any applicable Coverage B limit of liability.

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we shall not be liable:

   a. to the **insured** for an amount greater than the **insured's** interest; or

   b. for more than the applicable limit of liability.

2. **Your Duties After Loss.** After a loss to which this insurance may apply, you shall see that the following duties are performed:

   a. give immediate notice to us or our agent. Also notify the police if the loss is caused by theft. Also notify the credit card company or bank if the loss involves a credit card or bank fund transfer card;

   b. protect the property from further damage or loss, make reasonable and necessary temporary repairs required to protect the property, keep an accurate record of repair expenditures;

   c. prepare an inventory of damaged or stolen personal property. Show in detail the quantity, description, age, replacement cost and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

   d. as often as we reasonably require:

      (1) exhibit the damaged property;

      (2) provide us with records and documents we request and permit us to make copies;

      (3) submit to and subscribe, while not in the presence of any other **insured**:

         (a) statements; and

         (b) examinations under oath; and

   (4) produce employees, members of the **insured's** household or others for examination under oath to the extent it is within the **insured's** power to do so; and

   e. submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

      (1) the time and cause of loss;

      (2) interest of the **insured** and all others in the property involved and all encumbrances on the property;

      (3) other insurance which may cover the loss;

      (4) changes in title or occupancy of the property during the term of this policy;

      (5) specifications of any damaged building and detailed estimates for repair of the damage;

      (6) an inventory of damaged or stolen personal property described in 2.c.;

      (7) receipts for additional living expenses incurred and records supporting the fair rental value loss; and

      (8) evidence or affidavit supporting a claim under the Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss to a Pair or Set.** In case of loss to a pair or set, we may elect to:

   a. repair or replace any part to restore the pair or set to its value before the loss; or

   b. pay the difference between the depreciated value of the property before and after the loss.

13

FP-7955

SF-Frederick000020

4. **Appraisal.** If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

5. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only our share of the loss. Our share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.

6. **Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage.

7. **Our Option.** We may repair or replace any part of the property damaged or stolen with similar property. Any property we pay for or replace becomes our property.

8. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

   a. reach agreement with you;

   b. there is an entry of a final judgment; or

   c. there is a filing of an appraisal award with us.

9. **Abandonment of Property.** We need not accept any property abandoned by an **insured**.

10. **Mortgage Clause.** The word "mortgagee" includes trustee.

    a. If a mortgagee is named in this policy, any loss payable under Coverage A shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order of precedence of the mortgages.

    b. If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

       (1) notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

       (2) pays on demand any premium due under this policy, if you have not paid the premium; and

       (3) submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

    c. If this policy is cancelled by us, the mortgagee shall be notified at least 10 days before the date cancellation takes effect. Proof of mailing shall be proof of notice.

    d. If we pay the mortgagee for any loss and deny payment to you:

       (1) we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

       (2) at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

    e. Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

11. **No Benefit to Bailee.** We will not recognize an assignment or grant coverage for the benefit of a person or organization holding, storing or transporting property for

14

FP-7955

SF-Frederick000021

a fee. This applies regardless of any other provision of this policy.

12. **Intentional Acts.** If you or any person insured under this policy causes or procures a loss to property covered

under this policy for the purpose of obtaining insurance benefits, then this policy is void and we will not pay you or any other **insured** for this loss.

## SECTION II - LIABILITY COVERAGES

### COVERAGE L - PERSONAL LIABILITY

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability.

### COVERAGE M - MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing **bodily injury**. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage applies only:

1. to a person on the **insured location** with the permission of an **insured**;

2. to a person off the **insured location**, if the **bodily injury**:

   a. arises out of a condition on the **insured location** or the ways immediately adjoining;

   b. is caused by the activities of an **insured**;

   c. is caused by a **residence employee** in the course of the **residence employee's** employment by an **insured**; or

   d. is caused by an animal owned by or in the care of an **insured**; or

3. to a **residence employee** if the **occurrence** causing **bodily injury** occurs off the **insured location** and arises

out of or in the course of the **residence employee's** employment by an **insured**.

### SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

   a. expenses we incur and costs taxed against an **insured** in suits we defend;

   b. premiums on bonds required in suits we defend, but not for bond amounts greater than the Coverage L limit. We are not obligated to apply for or furnish any bond;

   c. reasonable expenses an **insured** incurs at our request. This includes actual loss of earnings (but not loss of other income) up to $100 per day for aiding us in the investigation or defense of claims or suits;

   d. prejudgment interest awarded against the **insured** on that part of the judgment we pay; and

   e. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an **insured** for **bodily injury** covered under this policy. We will not pay for first aid to you or any other **insured**.

3. **Damage to Property of Others.**

   a. We will pay for **property damage** to property of others caused by an **insured**.

   b. We will not pay more than the smallest of the following amounts:

      (1) replacement cost at the time of loss;

      (2) full cost of repair; or

15

FP-7955

SF-Frederick000022

(3) $500 in any one occurrence.

c. We will not pay for **property damage:**

(1) if insurance is otherwise provided in this policy;

(2) caused intentionally by an **insured** who is 13 years of age or older;

(3) to property, other than a rented golf cart, owned by or rented to an **insured,** a tenant of an **insured,** or a resident in your household; or

(4) arising out of:

(a) **business** pursuits;

(b) any act or omission in connection with a premises an **insured** owns, rents or controls, other than the **insured location;** or

(c) the ownership, maintenance, or use of a motor **vehicle,** aircraft, or watercraft, including airboat, air cushion, personal watercraft, sail board or similar type watercraft.

## SECTION II - EXCLUSIONS

1. Coverage L and Coverage M do not apply to:

a. **bodily injury** or **property damage:**

(1) which is either expected or intended by the **insured;** or

(2) which is the result of willful and malicious acts of the **insured;**

b. **bodily injury** or **property damage** arising out of **business** pursuits of any **insured** or the rental or holding for rental of any part of any premises by any **insured.** This exclusion does not apply:

(1) to activities which are ordinarily incident to non-**business** pursuits;

(2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

(3) to the rental or holding for rental of a residence of yours:

(a) on an occasional basis for the exclusive use as a residence;

(b) in part, unless intended for use as a residence by more than two roomers or boarders; or

(c) in part, as an office, school, studio or private garage;

(4) when the dwelling on the **residence premises** is a two, three or four-family dwelling and you oc-

cupy one part and rent or hold for rental the other part; or

(5) to farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations;

c. **bodily injury** or **property damage** arising out of the rendering or failing to render professional services;

d. **bodily injury** or **property damage** arising out of any premises currently owned or rented to any **insured** which is not an **insured location.** This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured;**

e. **bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading or unloading of:

(1) an aircraft;

(2) a motor **vehicle** owned or operated by or rented or loaned to any **insured;** or

(3) a watercraft:

(a) owned by or rented to any **insured** if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

(b) owned by or rented to any **insured** if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;

16

FP-7955

SF-Frederick000023

(c) powered by one or more outboard motors with more than 25 total horsepower owned by any **insured**;

(d) designated as an airboat, air cushion, or similar type of craft; or

(e) owned by any **insured** which is a personal watercraft using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**. Exclusion e.(3) does not apply while the watercraft is on the **residence premises**;

f.   **bodily injury** or **property damage** arising out of:

(1) the entrustment by any **insured** to any person;

(2) the supervision by any **insured** of any person;

(3) any liability statutorily imposed on any **insured**; or

(4) any liability assumed through an unwritten or written agreement by any **insured**;

with regard to the ownership, maintenance or use of any aircraft, watercraft, or motor vehicle which is not covered under Section II of this policy;

g.   **bodily injury** or **property damage** caused directly or indirectly by war, including undeclared war, or any warlike act including destruction or seizure or use for a military purpose, or any consequence of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental;

h.   **bodily injury** to you or any **insured** within the meaning of part a. or b. of the definition of **insured**.

This exclusion also applies to any claim made or suit brought against you or any **insured** to share damages with or repay someone else who may be obligated to pay damages because of the **bodily injury** sustained by you or any **insured** within the meaning of part a. or b. of the definition of **insured**;

i.   any claim made or suit brought against any **insured** by:

(1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**; or

(2) any person who makes a claim because of **bodily injury** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**.

This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** who is under 19 years of age; or

j.   **bodily injury** or **property damage** arising out of an **insured's** participation in, or preparation or practice for any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power.

2. Coverage L does not apply to:

a.   liability:

(1) for your share of any loss assessment charged against all members of an association of property owners; or

(2) assumed under any unwritten contract or agreement, or by contract or agreement in connection with a **business** of the **insured**;

b.   **property damage** to property currently owned by any **insured**;

c.   **property damage** to property rented to, occupied or used by or in the care of any **insured**. This exclusion

17                                                          FP-7955

SF-Frederick000024

does not apply to property damage caused by fire, smoke or explosion;

d. **bodily injury** to a person eligible to receive any benefits required to be provided or voluntarily provided by an **insured** under a workers' compensation, non-occupational disability, or occupational disease law;

e. **bodily injury** or property **damage** for which an **insured** under this policy is also an insured under a nuclear energy liability policy or would be an insured but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors.

3. Coverage M does not apply to **bodily injury:**

a. to a **residence employee** if it occurs off the **insured location** and does not arise out of or in the course of the **residence employee's** employment by an **insured;**

b. to a person eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability or occupational disease law;

c. from nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these;

d. to a person other than a **residence employee** of an **insured**, regularly residing on any part of the **insured location.**

## SECTION II - CONDITIONS

1. **Limit of Liability.** The Coverage L limit is shown in the **Declarations.** This is our limit for all damages from each **occurrence** regardless of the number of **insureds**, claims made or persons injured.

The Coverage M limit is shown in the **Declarations.** This is our limit for all medical expense for **bodily injury** to one person as the result of one accident.

2. **Severability of Insurance.** This insurance applies separately to each **insured.** This condition shall not increase our limit of liability for any one **occurrence.**

3. **Duties After Loss.** In case of an accident or **occurrence**, the **insured** shall perform the following duties that apply. You shall cooperate with us in seeing that these duties are performed:

a. give written notice to us or our agent as soon as practicable, which sets forth:

(1) the identity of this policy and **insured;**

(2) reasonably available information on the time, place and circumstances of the accident or occurrence; and

(3) names and addresses of any claimants and available witnesses;

b. immediately forward to us every notice, demand, summons or other process relating to the accident or **occurrence;**

c. at our request, assist in:

(1) making settlement;

(2) the enforcement of any right of contribution or indemnity against a person or organization who may be liable to an **insured;**

(3) the conduct of suits and attend hearings and trials; and

(4) securing and giving evidence and obtaining the attendance of witnesses;

d. under the coverage - **Damage to Property of Others**, exhibit the damaged property if within the **insured's** control; and

e. the **insured** shall not, except at the **insured's** own cost, voluntarily make payments, assume obligations or incur expenses. This does not apply to expense for first aid to others at the time of the **bodily injury.**

18                                                      FP-7955

**SF-Frederick000025**

4. **Duties of an Injured Person - Coverage M.** The injured person, or, when appropriate, someone acting on behalf of that person, shall:

   a. give us written proof of claim, under oath if required, as soon as practicable;

   b. execute authorization to allow us to obtain copies of medical reports and records; and

   c. submit to physical examination by a physician selected by us when and as often as we reasonably require.

5. **Payment of Claim - Coverage M.** Payment under this coverage is not an admission of liability by an **insured** or us.

6. **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions.

   No one shall have the right to join us as a party to an action against an **insured**. Further, no action with respect to Coverage L shall be brought against us until the obligation of the **insured** has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an **insured** shall not relieve us of our obligation under this policy.

8. **Other Insurance - Coverage L.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTION I AND SECTION II - CONDITIONS

1. **Policy Period.** This policy applies only to loss under Section I or **bodily injury** or **property damage** under Section II which occurs during the period this policy is in effect.

2. **Concealment or Fraud.** This policy is void as to you and any other **insured**, if you or any other **insured** under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

3. **Liberalization Clause.** If we adopt any revision which would broaden coverage under this policy without additional premium, within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination shall not waive any of our rights.

5. **Cancellation.**

   a. You may cancel this policy at any time by notifying us in writing of the date cancellation is to take effect. We may waive the requirement that the notice be in writing by confirming the date and time of cancellation to you in writing.

   b. We may cancel this policy only for the reasons stated in this condition. We will notify you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the **Declarations**. Proof of mailing shall be sufficient proof of notice:

      (1) When you have not paid the premium, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect. This condition applies whether the premium is payable to us or our agent or under any finance or credit plan.

      (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason. We may cancel by notifying you at least 10 days before the date cancellation takes effect.

      (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

         (a) if there has been a material misrepresentation of fact which, if known to us, would have caused us not to issue this policy; or

19

FP-7955

SF-Frederick000026

(b) if the risk has changed substantially since the policy was issued.

We may cancel this policy by notifying you at least 30 days before the date cancellation takes effect.

(4) When this policy is written for a period longer than one year, we may cancel for any reason at anniversary. We may cancel by notifying you at least 30 days before the date cancellation takes effect.

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. When you request cancellation, the return premium will be based on our rules for such cancellation. The return premium may be less than a full pro rata refund. When we cancel, the return premium will be pro rata.

d. The return premium may not be refunded with the notice of cancellation or when the policy is returned to us. In such cases, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.** We may elect not to renew this policy. If we elect not to renew, a written notice will be delivered to you, or mailed to you at your mailing address shown in the Declarations. The notice will be mailed or delivered at least 30 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

7. **Assignment.** Assignment of this policy shall not be valid unless we give our written consent.

8. **Subrogation.** An insured may waive in writing before a loss all rights of recovery against any person. If not

waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an **insured** shall:

a. sign and deliver all related papers;

b. cooperate with us in a reasonable manner; and

c. do nothing after a loss to prejudice such rights.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person shown in the **Declarations** or the spouse, if a resident of the same household, dies:

a. we insure the legal representative of the deceased. This condition applies only with respect to the premises and property of the deceased covered under this policy at the time of death;

b. **insured** includes:

(1) any member of your household who is an **insured** at the time of your death, but only while a resident of the **residence premises**; and

(2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the State in which this policy is issued, the law of the State will apply.

## OPTIONAL POLICY PROVISIONS

Each Optional Policy Provision applies only as shown in the Declarations and is subject to all the terms, provisions, exclusions and conditions of this policy.

**Option AI - Additional Insured.** The definition of **insured** is extended to include the person or organization shown in the Declarations as an Additional Insured or whose name is on file with us. Coverage is with respect to:

1. Section I - Coverage A; or

2. Section II - Coverages L and M but only with respect to the **residence premises**. This coverage does not apply to **bodily injury** to an employee arising out of or in the course of the employee's employment by the person or organization.

This option applies only with respect to the location shown in the Declarations.

**Option BP - Business Property.** The COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability, item b., for property used or intended for use in a business,

FP-7955

SF-Frederick000027

including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

The $1,000 limit is replaced with the amount shown in the Declarations for this option.

**Option BU - Business Pursuits. SECTION II - EXCLUSIONS**, item 1.b. is modified as follows:

1. Section II coverage applies to the **business** pursuits of an **insured** who is a:

   a. clerical office employee, salesperson, collector, messenger; or

   b. teacher (except college, university and professional athletic coaches), school principal or school administrator;

   while acting within the scope of the above listed occupations.

2. However, no coverage is provided:

   a. for **bodily injury** or **property damage** arising out of a business owned or financially controlled by the insured or by a partnership of which the insured is a partner or member;

   b. for **bodily injury** or **property damage** arising out of the rendering of or failure to render professional services of any nature (other than teaching or school administration). This exclusion includes but is not limited to:

      (1) computer programming, architectural, engineering or industrial design services;

      (2) medical, surgical, dental or other services or treatment conducive to the health of persons or animals; and

      (3) beauty or barber services or treatment;

   c. for **bodily injury** to a fellow employee of the **insured** injured in the course of employment; or

   d. when the **insured** is a member of the faculty or teaching staff of a school or college:

      (1) for **bodily injury** or **property damage** arising out of the maintenance, use, loading or unloading of:

(a) draft or saddle animals, including vehicles for use with them; or

(b) aircraft, **motor vehicles**, recreational motor vehicles or watercraft, airboats, air cushions or personal watercraft which use a water jet pump powered by an internal combustion engine as the primary source of propulsion;

owned or operated, or hired by or for the **insured** or employer of the **insured** or used by the **insured** for the purpose of instruction in the use thereof; or

(2) under Coverage M for **bodily injury** to a pupil arising out of corporal punishment administered by or at the direction of the insured.

**Option FA - Firearms.** Firearms are insured for accidental direct physical loss or damage.

The limits for this option are shown in the Declarations. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

   a. mechanical breakdown, wear and tear, gradual deterioration;

   b. insects or vermin;

   c. any process of refinishing, renovating, or repairing;

   d. dampness of atmosphere or extremes of temperatures;

   e. inherent defect or faulty manufacture;

   f. rust, fouling or explosion of firearms;

   g. breakage, marring, scratching, tearing or denting unless caused by fire, thieves or accidents to conveyances; or

   h. infidelity of an insured's employees or persons to whom the insured property may be entrusted or rented;

21

FP-7955

**SF-Frederick000028**

2. our limit for loss by any Coverage B peril except theft is the limit shown in the Declarations for Coverage B, plus the aggregate limit;

3. our limits for loss by theft are those shown in the Declarations for this option. These limits apply in lieu of the Coverage B theft limit; and

4. our limits for loss by any covered peril except those in items 2. and 3. are those shown in the Declarations.

**Option HC - Home Computer.** The **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability,** item i., for electronic data processing system equipment and the recording or storage media used with that equipment is increased to be the amount shown in the Declarations for this option.

**Option ID - Increased Dwelling Limit.** We will settle losses to damaged building structures covered under **COVERAGE A - DWELLING** according to the **SECTION I - LOSS SETTLEMENT** provision shown in the **Declarations.**

If the amount you actually and necessarily spend to repair or replace damaged building structures exceeds the applicable limit of liability shown in the Declarations, we will pay the additional amounts not to exceed:

1. the Option ID limit of liability shown in the **Declarations** to repair or replace the Dwelling; or

2. 10% of the Option ID limit of liability to repair or replace building structures covered under **COVERAGE A - DWELLING, Dwelling Extension.**

**Report Increased Values.** You must notify us within 90 days of the start of any new building structure costing $5,000 or more; or any additions to or remodeling of building structures which increase their values by $5,000 or more. You must pay any additional premium due for the increased value. **We will** not pay more than the applicable limit of liability shown in the Declarations, if you fail to notify us of the increased value within 90 days.

**Option IO - Incidental Business.** The coverage provided by this option applies only to that incidental **business** occupancy on file with us.

1. **COVERAGE A - DWELLING, Dwelling Extension,** item 2.b. is deleted.

2. **COVERAGE B - PERSONAL PROPERTY** is extended to include equipment, supplies and furnishings usual and

incidental to this business occupancy. This Optional Policy Provision does not include electronic data processing system equipment or the recording or storage media used with that equipment or merchandise held as samples or for sale or for delivery after sale.

The Option IO limits are shown in the **Declarations.** The first limit applies to property on the **residence premises.** The second limit applies to property while off the **residence premises.** These limits are in addition to the **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability** on property used or intended for use in a **business.**

3. Under Section II, the **residence premises** is not considered **business** property because an **insured** occupies a part of it as an incidental **business.**

4. **SECTION II - EXCLUSIONS,** item 1.b. of Coverage L and Coverage M is replaced with the following:

   b. **bodily injury** or **property damage** arising out of **business** pursuits of an **insured** or the rental or holding for rental of any part of any premises by an **insured.** This exclusion does not apply:

     (1) to activities which are ordinarily incident to non-business pursuits or to **business** pursuits of an **insured** which are necessary or incidental to the use of the **residence premises** as an incidental **business;**

     (2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

     (3) to the rental or holding for rental of a residence of yours:

       (a) on an occasional basis for exclusive use as a residence;

       (b) in part, unless intended for use as a residence by more than two roomers or boarders; or

       (c) in part, as an incidental business or private garage;

     (4) when the dwelling on the **residence premises** is a two family dwelling and you occupy

22

FP-7955

SF-Frederick000029

one part and rent or hold for rental the other part; or

(5) to farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

5. This insurance does not apply to:

a. **bodily injury** to an employee of an **insured** arising out of the **residence premises** as an incidental **business** other than to a **residence employee** while engaged in the employee's employment by an **insured**;

b. **bodily injury** to a pupil arising out of corporal punishment administered by or at the direction of the **insured**;

c. liability arising out of any acts, errors or omissions of an **insured**, or any other person for whose acts an **insured** is liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specifications, supervisory inspections or engineering services in the conduct of an **insured's** incidental **business** involving data processing, computer consulting or computer programming; or

d. any claim made or suit brought against any **insured** by:

(1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**; or

(2) any person who makes a claim because of **bodily injury** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**.

Coverage M does not apply to any person indicated in (1) and (2) above.

This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** who is under 19 years of age.

**Option JF - Jewelry and Furs.** Jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones, gold other than goldware, silver other than silverware and platinum are insured for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations**. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

a. mechanical breakdown, wear and tear, gradual deterioration;

b. insects or vermin;

c. inherent vice; or

d. seizure or destruction under quarantine or customs regulations;

2. our limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. our limits for loss by theft are those shown in the **Declarations** for this option; and

4. our limits for loss by any covered peril except those in items 2. and 3. are those shown in the **Declarations** for this option.

23                                    FP-7955

SF-Frederick000030

Option OL - Building Ordinance or Law.

1. Coverage Provided.

The total limit of insurance provided by this Building Ordinance or Law provision will not exceed an amount equal to the Option OL percentage shown in the Declarations of the Coverage A limit shown in the Declarations at the time of the loss, as adjusted by the inflation coverage provisions of the policy. This is an additional amount of insurance and applies only to the dwelling.

2. Damaged Portions of Dwelling.

When the dwelling covered under **COVERAGE A - DWELLING** is damaged by a Loss Insured we will pay for the increased cost to repair or rebuild the physically damaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs.

3. Undamaged Portions of Damaged Dwelling.

When the dwelling covered under **COVERAGE A - DWELLING** is damaged by a Loss Insured we will also pay for:

a. the cost to demolish and clear the site of the undamaged portions of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs; and

b. loss to the undamaged portion of the dwelling caused by enforcement of any ordinance or law if:

(1) the enforcement is directly caused by the same Loss Insured;

(2) the enforcement requires the demolition of portions of the same dwelling not damaged by the same Loss Insured;

(3) the ordinance or law regulates the construction or repair of the dwelling, or establishes zoning or

land use requirements at the described premises; and

(4) the ordinance or law is in force at the time of the occurrence of the same Loss Insured; or

c. the legally required changes to the undamaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs.

4. Building Ordinance or Law Coverage Limitations.

a. We will not pay for any increased cost of construction under this coverage:

(1) until the dwelling is actually repaired or replaced at the same or another premises in the same general vicinity; and

(2) unless the repairs or replacement are made as soon as reasonably possible after the loss, not to exceed two years.

b. We will not pay more for loss to the undamaged portion of the dwelling caused by the enforcement of any ordinance or law than:

(1) the depreciated value of the undamaged portion of the dwelling, if the dwelling is not repaired or replaced;

(2) the amount you actually spend to replace the undamaged portion of the dwelling if the dwelling is repaired or replaced.

c. We will not pay more under this coverage than the amount you actually spend:

(1) for the increased cost to repair or rebuild the dwelling at the same or another premises in the same general vicinity if relocation is required by ordinance or law; and

(2) to demolish and clear the site of the undamaged portions of the dwelling caused by enforcement of building, zoning or land use ordinance or law.

FP-7955

SF-Frederick000031

We will never pay for more than a dwelling of the same height, floor area and style on the same or similar premises as the dwelling, subject to the limit provided in paragraph 1. **Coverage Provided** of this option.

**Option SG - Silverware and Goldware Theft.** The COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability, item h., for theft of silverware and goldware is increased to be the amount shown in the Declarations for this option.

IN WITNESS WHEREOF, this Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

*Kim M. Brunner*                          Secretary                          *Edward B Rust Jr*                          President

The Board of Directors, in accordance with Article VI(c) of this Company's Articles of Incorporation, may from time to time distribute equitably to the holders of the participating policies issued by said Company such sums out of its earnings as in its judgment are proper.

FP-7955

SF-Frederick000032

FE-2250
(2/98)

# AMENDATORY ENDORSEMENT
## (Wyoming)

**SECTION I - ADDITIONAL COVERAGES**

**Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money,** item c.(1) is replaced with the following:

c. Defense

(1) We may make any investigation and settle any claim or suit that we decide is appropriate. The tender of policy limits before judgment or settlement does not relieve the Company of its duty to defend.

**SECTION I - CONDITIONS**

**Suit Against Us** is replaced with the following:

**Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions and the action is started within four years from the time the cause of action accrues.

**Loss Payment** is replaced with the following:

**Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Claims for benefits under this policy shall be rejected or accepted and paid by us or our agent designated to receive those claims within 45 days after receipt of the claim and supporting bills.

**SECTION II - LIABILITY COVERAGES**

**COVERAGE L - PERSONAL LIABILITY,** item 2. is replaced with the following:

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. The tender of policy limits before judgment or settlement does not relieve the Company of its duty to defend.

**SECTION II - EXCLUSIONS**

Item 2.: The following exclusion is added:

Coverage L does not apply to punitive damages.

**SECTION I AND SECTION II - CONDITIONS**

**Cancellation and Nonrenewal** references to "30 days" are changed to "45 days".

**Right to Inspect** is added:

**Right to Inspect.** We have the right but are not obligated to make inspections and surveys at any time, give you reports on conditions we find and recommend changes. Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged.

We do not:

a. make safety inspections;

b. undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public;

c. warrant that conditions are safe or healthful; or

FE-2250
(2/98)

(CONTINUED ON REVERSE SIDE)

Printed in U.S.A.

SF-Frederick000033

d.  warrant that conditions comply with laws, regulations, codes or standards.

This condition applies not only to us but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**Joint and Individual Interests** is added:

**Joint and Individual Interests.** When there are two or more named insureds, each acts for all to cancel or change the policy.

All other policy provisions apply.

SF-Frederick000034

FE-5320
(4/99)

## POLICY ENDORSEMENT

**SECTION I AND SECTION II - CONDITIONS**

The following condition is added:

**Premium.** The premium for this policy may vary based upon the purchase of other insurance from one of the State Farm affiliated companies.

All other policy provisions apply.

FE-5320
(4/99)

Printed in U.S.A.

SF-Frederick000035

FE-5398

## FUNGUS (INCLUDING MOLD) EXCLUSION ENDORSEMENT

**DEFINITIONS**

The following definition is added:

"**fungus**" means any type or form of **fungus**, including mold, mildew, mycotoxins, spores, scents or byproducts produced or released by fungi.

**SECTION I - LOSSES INSURED**

Item 12.d. is replaced with the following:

d. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, or wet or dry rot.

Item 13.b. is replaced with the following:

b. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, or wet or dry rot.

**SECTION I - LOSSES NOT INSURED**

Item 1.i. is replaced with the following:

i. wet or dry rot;

FE-5398

In item 2., the following is added as item g.:

g. **Fungus**. We also do not cover:

(1) any loss of use or delay in rebuilding, repairing or replacing covered property, including any associated cost or expense, due to interference at the **residence premises** or location of the rebuilding, repair or replacement, by **fungus**;

(2) any remediation of **fungus**, including the cost to:

(a) remove the **fungus** from covered property or to repair, restore or replace that property; or

(b) tear out and replace any part of the building or other property as needed to gain access to the **fungus**; or

(3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence or level of **fungus**, whether performed prior to, during or after removal, repair, restoration or replacement of covered property.

All other policy provisions apply.

SF-Frederick000036

FE-5452

## MOTOR VEHICLE ENDORSEMENT

### DEFINITIONS

The definition of "motor vehicle" is replaced by the following:

"motor vehicle", when used in Section II of this policy, means:

a. a land motor vehicle designed for travel on public roads or subject to motor vehicle registration;

b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration;

c. a "recreational vehicle" while off an insured location. "Recreational vehicle", means a motorized vehicle designed for recreation principally off public roads that is owned or leased by an insured. This includes, but is not limited to, a motorized all terrain vehicle, amphibious vehicle, dune buggy, go-cart, golf cart, snowmobile, trailbike, minibike and personal assistive mobility device;

d. a "locomotive" while off an insured location. "Locomotive" means a self-propelled vehicle for pulling or pushing freight or passenger cars on tracks that is large enough to carry a person and is owned or leased by an insured;

e. a bulldozer, track loader, backhoe, high-hoe, trencher, grader, crane, self-propelled scraper, excavator, pipe-layer, cherry picker, telehandler, logging vehicle, mining vehicle or road building vehicle that is owned or leased by an insured while off an insured location;

f. any vehicle while being towed or pushed by or carried on a vehicle included in a., b., c., d. or e.;

g. the following are not motor vehicles:

(1) a motorized land vehicle in dead storage on an insured location;

(2) a boat, camp, home or utility trailer not being towed or pushed by or carried on a vehicle included in a., b., c., d. or e.;

(3) a motorized golf cart while used for golfing purposes;

(4) a motorized vehicle or trailer designed to assist the handicapped that is not designed for travel on public roads or subject to motor vehicle registration;

h. "leased" does not include temporary rental.

All other policy provisions apply.

FE-5452

SF-Frederick000037

FE-5831
Page 1 of 1

## TELECOMMUTER COVERAGE

**SECTION I – COVERAGES**
**COVERAGE A – DWELLING**

The following replaces item 2.b.:

b. used in whole or in part for **business** purposes unless such use consists solely of use of office space for paperwork, computer work or use of a telephone, and consists solely of activities that are:

(1) duties of the **insured's** employment by another; and

(2) performed solely by the **insured.**

FE-5831

SF-Frederick000038

# AMENDATORY DEBRIS REMOVAL ENDORSEMENT

**SECTION I - ADDITIONAL COVERAGES**

Item 1., **Debris Removal** is replaced with the following:

1. **Debris Removal.** We will pay the reasonable expenses you incur in the removal of debris of covered property damaged by a Loss Insured. This expense is included in the limit applying to the damaged property. The following coverages and limits also apply:

   a. When the amount payable for the property damage plus the debris removal exceeds the limit for damaged property, an additional 5% of that limit is available for debris removal expense. This additional amount of insurance does not apply to Additional Coverage, item 3. Trees, Shrubs and Other Plants.

   b. We will also pay up to $500 in the aggregate for each loss to cover the reasonable expenses you incur in the removal of tree debris from the **residence premises**, unless otherwise excluded. This coverage applies when:

      (1) the tree has caused a Loss Insured to Coverage A property; or

      (2) the tree debris felled by windstorm, hail, or weight of snow or ice blocks:

         (a) the driveway, on the **residence premises**, and prevents land motor vehicle access to or from the dwelling; or

         (b) a ramp designed to assist the handicapped, on the **residence premises** and prevents access to or from the dwelling.

04/23/2010 15:23 FAX  480 636 3190                                      ☒003/029

_Serve_

| | |
|---|---|
| **STATE OF WYOMING** ) | **IN THE DISTRICT COURT** |
| ) § | |
| **COUNTY OF CAMPBELL** ) | **SIXTH JUDICIAL DISTRICT** |

**TIMOTHY JOE SMITH**                    )
                                         )
    *Plaintiff,*                       )
                                         )
**vs.**                                  )     Civil No. 30977
                                         )
**JASON JAY FREDERICK**                  )
                                         )   FILED NO.
    *Defendant.*                      )   CIVIL ☐ PROBATE ☐ CRIMINAL ☐
                                         )        ADOPT ☐        DEL ☐
                                         )
                                         )      APR 0 7 2010
--------------------------------------   )
                                             DEPUTY CLERK OF DISTRICT COURT

### COMPLAINT FOR DAMAGES

COMES NOW the Plaintiff, Timothy Joe Smith, by and through his undersigned attorney, J. Stan Wolfe of the Law Firm of J. Stan Wolfe, P.C., and for his Complaint For Damages against the Defendant, Jason Jay Frederick, does set forth, state, and allege as follows:

1.    The Plaintiff, Timothy Joe Smith, is, and at all times pertinent hereto, was a resident of the Town of Upton, Weston County, Wyoming.

2.    Upon information and belief, the Defendant Jason Jay Frederick is, and at all times pertinent hereto, was a resident of the City of Gillette, Campbell County, Wyoming.

Jeremy-682-2037

1

687-1737

**Exhibit B**



3.      This Complaint is for the damages sustained by Timothy Joe Smith as a result of personal injuries to him. The amount sought is sufficient to satisfy the jurisdictional requirements of the District Court.

4.      Venue and jurisdiction are proper in this matter in Campbell County, Wyoming pursuant to Wyoming Statute Section 1-5-109.

### FACTS COMMON TO ALL CLAIMS

5.      On April 11, 2009, at approximately 1:56 a.m., Timothy Joe Smith was in the Cowboy Bar located in Upton, Weston County, Wyoming. The Plaintiff had driven a friend to the bar to enable her to meet with another person. Mr. Smith entered the bar to make contact with the friend and thereafter to drive her to her home. The Defendant Jason Jay Frederick was a patron at the Cowboy Bar in Upton, Weston County, Wyoming at that same time.

6.      The Plaintiff Timothy Joe Smith was in all respects conducting himself in a lawful and proper manner while at the Cowboy Bar.

7.      For reasons unknown to the Plaintiff Timothy Joe Smith, the Defendant Jason Jay Frederick became angry, and without warning or provocation, unlawfully touched the Plaintiff Timothy Joe Smith by striking him in the face and about his body at least twenty-seven (27) times.

8.      The actions of the Defendant Jason Frederick constituted an assault and battery upon the Plaintiff Timothy Joe Smith.

2



9.     The actions of the Defendant Jason Jay Frederick, in touching the Plaintiff by striking him and committing an assault and battery in each instance, were unlawful and were performed without the consent of the Plaintiff.

10.     As a result of the acts of the Defendant Jason Jay Frederick, the Plaintiff Timothy Joe Smith suffered serious bodily injuries requiring medical attention. As a result of the unlawful actions of the Defendant, the Plaintiff was required to undergo reconstructive surgery of his nose, which was severely damaged and crushed as a result of the blows landed by the Defendant. The Plaintiff sustained the following injuries:

> A.     Left orbital floor blowout fracture;
>
> B.     Left nasoseptal deviation;
>
> C.     Inferior turbinate hypertrophy, bilaterally;
>
> D.     Traumatic fracture and dislodging of two (2) of his teeth;
>
> E.     The perforation of his left eardrum;

11.     As a result of the above injuries, surgery was performed on the face and nose of the Plaintiff, including the following:

> A.     Open reduction with internal fixation of a left orbital floor fracture;
>
> B.     Nasoseptal reconstruction;
>
> C.     Turbinate reduction bilaterally;

3



12.   The Plaintiff was treated by Brian A. Peshek, M.D., an Ears, Nose, and Throat surgeon in Gillette, Wyoming, who performed the necessary care and treatment of the Plaintiff's nose, including the reconstruction of the same and surrounding area. The severity of the injuries caused by the Defendant to the Plaintiff necessitated hospitalization on an outpatient basis for the performance of such surgery.

13.   The total amount of the medical bills and expenses incurred by the Plaintiff, as a result of his injuries as of December 2, 2009, totaled seventeen thousand, one hundred and sixty dollars and seven cents ($17,160.07).  The Defendant has paid for all of the medical bills and expenses incurred by the Plaintiff through the 2nd day of December, 2009.

14.   The Plaintiff is continuing to have difficulty with his nose and sinus regions. With respect to his teeth which were knocked out by the Defendant, the remaining portions imbedded within the Plaintiff's gum and jawline will need to be removed and replaced. He is also experiencing numbness in the area of other teeth in the same region. The Plaintiff will require further medical care and treatment for the injuries caused by the Defendant.

15.   The actions of the Defendant have caused the Plaintiff an extreme amount of pain and suffering, along with scarring, disfigurement, emotional damage, and loss of enjoyment of life.

4



16.    At all times in which the Defendant was at the Cowboy Bar in Upton, Weston County, Wyoming, he had a duty to conduct himself in a lawful manner.

17.    As a result of the unlawful touching and the assault and battery committed upon the Plaintiff by the Defendant, the Plaintiff has been damaged in an amount to be determined at the time of trial, which sum exceeds the jurisdictional requirements of the District Court.

18.    The actions of the Defendant in striking the Plaintiff multiple times were the proximate cause of the physical and emotional injuries and other damages sustained by the Plaintiff.

19.    As a direct and proximate result of the actions and conduct of the Defendant Jason Jay Frederick, the Plaintiff Timothy Joe Smith has suffered permanent and catastrophic physical and emotional injuries including:

A.    Medical and hospital expenses existing as of December 2, 2009, for which the Defendant has paid the sum totaling seventeen thousand, one hundred and sixty dollars and seven cents ($17,160.07);

B.    Future medical expenses;

C.    Economic loss, including lost wages and benefits;

D.    Physical pain and suffering;

E.    Permanent injuries and disabilities;

F.    Loss of enjoyment of life;

5



G.      Emotional pain, suffering, and distress.

20.    All of the aforementioned damages will be proven by the evidence at the trial in this matter.

## FIRST CAUSE OF ACTION
## (CLAIM FOR INTENTIONAL ACTS BY THE DEFENDANT)

21.    The Plaintiff hereby incorporates by reference all allegations previously set forth in Paragraphs 1 through 20 as if fully stated herein.

22.    The actions of the Defendant were committed intentionally, maliciously, and with the intent to injure the Plaintiff.

23.    The intentional actions constituting assault and battery by the Defendant in fact caused serious bodily injury to the Plaintiff, for which the Plaintiff is entitled to an award of damages against the Defendant.

## SECOND CAUSE OF ACTION
## (FOR PUNITIVE DAMAGES AGAINST THE DEFENDANT)

24.    The Plaintiff hereby fully incorporates by reference all allegations set forth in preceding Paragraphs 1 through 23 as if fully stated herein.

25.    The actions of the Defendant in striking the Plaintiff multiple times were done so in a willful and wanton manner, with a conscious disregard of the consequences to the Plaintiff, and were intended to and in fact caused serious bodily injury.

6



26.    The actions of the Defendant constitute assault and battery, intentional infliction of physical and emotional distress, and other damages as provided herein.

27.    As a result of the foregoing actions of the Defendant, the Plaintiff is entitled to punitive damages against the Defendant Jason Jay Frederick in an amount to be determined at the time of trial.

## THIRD CAUSE OF ACTION
## (FOR NEGLIGENTLY CAUSING INJURIES TO THE PLAINTIFF)

28.    The Plaintiff hereby fully incorporates, by reference, all allegations set forth in the preceding Paragraphs 1 through 27 as if fully stated herein.

29.    As an alternative claim for relief, the Plaintiff alleges the Defendant struck the Plaintiff, but did not intend the consequences of his actions in causing the bodily injuries and other damages sustained by the Plaintiff.

30.    The Defendant had a duty to conduct himself at all times in a reasonable manner, and to not cause any injuries or damages to the Plaintiff as a result of his actions.

31.    As a result of the Defendant striking the Plaintiff, the Defendant breached his duty to the Plaintiff by negligently causing the injuries to the Plaintiff, consisting of the damages as previously set forth within this Complaint.

32.    As a result of the negligence of the Defendant, which constituted the proximate cause of the injuries to the Plaintiff, the Plaintiff is entitled to damages

7



against the Defendant Jason Jay Frederick in an amount to be determined at the time of trial.

WHEREFORE, THE PLAINTIFF TIMOTHY JOE SMITH PRAYS AS FOLLOWS:

1.     That Judgment be entered in favor of the Plaintiff Timothy Joe Smith and against the Defendant Jason Jay Frederick for the injuries and damages sustained by the Plaintiff as a result of the intentional acts of the Defendant, in an amount to be shown by the evidence at the trial of this matter;

2.     That Judgment be entered in favor of the Plaintiff Timothy Joe Smith and against the Defendant Jason Jay Frederick for punitive damages as a result of the willful and wanton misconduct and extreme indifference to the physical wellbeing of the Plaintiff, and for the injuries and other damages sustained by the Plaintiff in an amount to be shown by the evidence at the trial of this matter;

3.     That, alternatively, Judgment be entered in favor of the Plaintiff Timothy Joe Smith and against the Defendant Jason Jay Frederick for the negligent infliction of the injuries, both physical and emotional, and all other damages sustained by the Plaintiff in an amount to be shown by the evidence at the trial of this matter;

8



4.    That the Plaintiff Timothy Joe Smith be awarded his reasonable fees and expenses incurred in bringing this action, including but not limited to, reasonable attorneys' fees and costs, including Court costs; and

5.    For such other and further relief as may be just and equitable in the premises.

DATED this 7th day of April, 2010.

LAW FIRM OF J. STAN WOLFE, P.C.

_____
Timothy Joe Smith
Plaintiff

_____
J. Stan Wolfe
WY Bar No. 5-1989
Attorney for Plaintiff
222 S. Gillette Avenue, Suite 500
Gillette, WY 82716
Telephone:  307.682.2251
Fax:        307.686.4721
Email:      wolfelaw@vcn.com

## VERIFICATION

I, Timothy Joe Smith, am the Plaintiff in the above entitled matter. I have read the foregoing Complaint For Damages and know the contents thereof. After being duly sworn upon my oath, I hereby assert all of the allegations and contents are true and correct to the best of my knowledge.

_____
Timothy Joe Smith

9



**STATE OF WYOMING**      )
                              ) §

**COUNTY OF CAMPBELL**    )

        The foregoing was sworn to, acknowledged, and signed before me by Timothy Joe Smith, known to me (or satisfactorily proven) to be the person named in the foregoing document, and who acknowledged that he freely and voluntarily executed the same for the purposes stated therein this 7th day of April, 2010.

        WITNESS my hand and official seal.

> Christina R. Alley - Notary Public
> County of Campbell    State of Wyoming
> My Commission Expires 5-16-2013

_____
Notary Public

My Commission Expires: 5-16-2013

10-322.3